# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| SUNG PARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:10-cv-1408-WTL-WGH |
| | ) |
| INDIANA UNIVERSITY SCHOOL OF DENTISTRY, et al., | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON MOTION TO DISMISS

Before the Court is the Defendants' Motion to Dismiss (Docket No. 19). This motion is fully briefed, and the Court being duly advised, now **GRANTS** the Defendants' motion for the reasons set forth below. The Plaintiff's Motion for Oral Argument (Docket No. 24) is **DENIED**.

## I. RULE 12(b)(6) STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must take the facts alleged in the Complaint as true and draw all reasonable inferences in favor of the Plaintiff. The Complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and there is no need for detailed factual allegations. However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II. BACKGROUND

The facts as alleged in Park's Complaint are as follow. In 2006, Plaintiff Sung Park

applied and was accepted into the doctorate of dental surgery program at the Indiana University School of Dentistry ("IUSD"). Park successfully completed her first year at IUSD. However, in 2008, during her second year of dental school, she began to experience some difficulties.

First, Park was ordered to take a remediation exam by Dr. Steven Haug. Although she was ready to take the exam, Dr. Haug gave Park a failing grade in the class. She was also charged with "failure to report to a scheduled remediation appointment or make a reasonable effort to reschedule the same" based on her conduct surrounding Dr. Haug's exam. Compl. ¶ 38. Then, Park was charged with "arriving late for and subsequently leaving early with respect to a remediation examination (without permission from the faculty)." *Id*. ¶ 39. However, Park alleges that she should not have been required to take the remediation examination in question, as she had not failed the class.[1] Next, Park was accused of "failure to remain in contact with the [IUSD Student Professional Conduct Committee ("SPCC")] during the course of an investigation." *Id*. ¶ 42. Because the SPCC used an improper email address[2] for Park, she missed two SPCC meetings and was subsequently charged with failure to remain in contact. Ultimately, Park was called before the IUSD Progress Committee, required to sit out of school for one year, and instructed to retake her second year classes.

In 2010, after recommencing her dental school classes, Park was informed by Dr. Robert Kasberg, Jr., that she had to "engage in an extended clinical orientation." *Id*. ¶ 40. Park states that this was unnecessary based upon her grade point average (3.0 for the Spring 2010 Semester

---

[1] Park ultimately passed that class – Removable Partial Dentures – based on her original grade.

[2] Instead of using Park's official @indiana.edu email address, the SPCC used an alternative address for Park, which prevented her from receiving notices from the committee.

and 2.9 for the Fall 2010 Semester) and no other student was required to undergo an extended clinical orientation. Nonetheless, Park complied with the 50% lab attendance requirement. However, she was ultimately reprimanded by Dr. Carlson and called before the SPCC. The SPCC concluded that there could have been confusion about the obligations imposed on Park with respect to the extended clinical orientation.

Also in 2010, Park was charged with violating the IUSD Code of Conduct by breaching confidentiality. Park believes that this charge stems from an August 16, 2010, letter that she sent to a professor apologizing for a "mutually unprofessional exchange in 2008." *Id.* ¶ 41.

Finally, Park was charged with failure to report an absence in April 2010. Although the SPCC determined that Park had not breached the IUSD Code of Conduct, Dr. Kasberg proceeded to take those charges to the IUSD Faculty Professional Conduct Committee ("FPCC").

During her tenure at IUSD Park was repeatedly called before the SPCC and the FPCC but was never provided with advance notice of the hearings, informed of the specific charges against her, or allowed to be present at some of the hearings. Although Park was "made aware of the details of the charges against her by the SPCC during the meeting/hearing in which she was expected to defend herself . . . she was forced to defend herself on the spot." *Id.* ¶ 35. Furthermore, Dr. Kasberg advised Park not to retain counsel and he encouraged her to admit that she was "wrong" during the SPCC proceedings. *Id.* ¶ 48. He also advised against appealing the results of the SPCC and FPCC proceedings.

In 2010, Park was dismissed from IUSD for professional misconduct. She subsequently filed suit in this Court, alleging violation of the federal Due Process and Equal Protection

clauses, as well as breach of contract. The Defendants[3] have now moved to dismiss her Complaint.

### III. DISCUSSION

As an initial matter, Park concedes that she cannot seek damages for violation of her civil rights from IU, Dr. Willams in his official capacity, or Dr. Kasberg in his official capacity because all of these Defendants benefit from the State of Indiana's Eleventh Amendment immunity. However, Park can seek injunctive relief as to her civil rights claims and damages for her breach of contract claim from all of the Defendants. Park can also seek damages for violation of her civil rights from Drs. Kasberg and Williams in their individual capacities. Accordingly, despite Park's concession as to Eleventh Amendment immunity, all of her claims remain in some iteration or another.

A.  **Breach of contract.**

Park's Complaint asserts that she entered into a "valid and binding contract" with the Defendants that the Defendants subsequently breached. Compl. ¶¶ 82-89. "It is held generally in the United States that the basic legal relation between a student and a private university or college is contractual in nature." *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992) (internal citations omitted). This proposition applies with equal force to the relationship between a student and a public university. *See Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1248 (Ind. Ct. App. 2007).

In order to state a claim for breach of contract in the student-university context, Park

---

[3] The Defendants are the Indiana University School of Dentistry, the Trustees of Indiana University (hereinafter referred to together as "IU"), Dr. John N. Williams, and Dr. Robert H. Kasberg, Jr.

4

"must point to an identifiable contractual promise that the defendant[s] failed to honor." *Ross*, 957 F.2d at 417. The essence of such a claim is "not that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service *at all*." *Id.* (emphasis added). Thus, ruling on a breach of educational contract requires "an objective assessment of whether the institution made a good faith effort to perform on its promise." *Id.*

Here, Park asserts that she "complied with her contract with IUSD by maintaining at least the requisite grade point average and by paying the tuition required by IUSD." Compl. ¶ 87. Thus, according to Park, all she had to do to receive a diploma from the Defendants was pay her tuition and maintain a certain grade point average. However, the documents attached to the Complaint[4] establish that while there may have been a contract between Park and the Defendants, Park has not accurately described its terms.

Nothing in the Complaint indicates that IU promised Park a diploma merely if she maintained a 2.0 GPA and paid her tuition. Indeed, the only place where the minimum GPA requirement is even discussed is in the IUSD Student Handbook, which states:

> Failure in a course or module can result in suspension. Because of the integrated nature of the curriculum, the Progress Committee may recommend that a student be required to repeat a full semester or academic year in order to remove the failing grade in the course in question. Failure in multiple classes, repeated instances of earning a semester grade point average below a 2.0, a cumulative grade point average below 2.00 following completion of all first and second

---

[4] By virtue of Federal Rule of Civil Procedure 10, these documents are part of the Complaint, *see Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 729 (7th Cir. 1999) (stating that "[d]ocuments attached to the complaint are incorporated into it and become part of the pleading itself."). More importantly, these documents are part of any contract between Park and the Defendants. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (stating that the catalogues, bulletins, circulars, and regulations of an educational institution that are made available to students may become part of the contract between the student and the institution).

> years' regularly scheduled coursework, and lack of acceptable progress, in the judgment of the faculty, toward the requirements for the degree can each lead to dismissal.

Docket No. 1 Ex. 3 at 31. Noticeably absent from this paragraph is any affirmative promise that a student who maintains at least a 2.0 GPA and pays his or her tuition will receive a diploma from IU. Moreover, the IUSD Student Handbook, the Student Code of Conduct, and the IUSD Code of Professional Conduct impose additional requirements on students. For example, students are expected to: "[u]phold and maintain academic and professional honesty and integrity," Docket No. 1 Ex. 1 at 6; "[b]e responsible for their behavior, and respect the rights and dignity of others both within and outside of the university community," *id.* at 8; "become competent dental professionals and . . . maintain exemplary ethical and professional attitudes," Docket No. 1 Ex. 2 at 2; "maintain the highest standards of scholarship, honor, ethics and professional conduct," Docket No. 1 Ex. 3 at 28; and "recognize, develop, and maintain the professional behavior required for a career in dentistry." *Id.* at 30. In addition, "[a]ttendance of students in courses in which they are enrolled is mandatory." *Id.* at 19.

Taken together, the IUSD Student Handbook, the Student Code of Conduct, and the IUSD Code of Professional Conduct indicate that Park's contention that IU promised her a diploma if she maintained a 2.0 and paid tuition is incorrect. Nothing in the documents comprising the contract between Park and IU suggests that the Defendants will not dismiss any student who maintains a 2.0 GPA and pays his or her tuition. Thus, not only has Park failed to show that a contract existed on the terms she alleges, she has also failed to identify a specific contractual promise that the Defendants failed to satisfy. Accordingly, the Defendants' motion to dismiss is **GRANTED** as to the breach of contract claim.

### B. Procedural due process.

Park claims that the Defendants suspended and dismissed her from the IUSD "without providing sufficient notice and a hearing," Compl. ¶ 72, in violation of the Fourteenth Amendment.

In order to have a procedural due process claim, Park must have been deprived of a property right. If Park has such a protected property interest, then the Court must determine what process is due. *See Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008).

Neither the Supreme Court nor the Seventh Circuit has held that there is a constitutional right to continued enrollment in a post-secondary education program. Although Park is correct that the Supreme Court has twice *assumed* that there is a right to continued graduate education, *see Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985); *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84 (1978), the Court has never expressly *held* that such a constitutional right exists. Perhaps recognizing the shortcomings of this line of argument, Park instead asserts that she has a both a liberty and a property interest at stake. As to the property interest, Park argues that by virtue of her contract with IU she had the right to continued enrollment in dental school. In *Williams*, the Seventh Circuit explained that an education, although "not 'property' in the usual sense of the word," could be included in the Supreme Court's definition of the word "property" in the due process clause of the Fourteenth Amendment. *Williams*, 530 F.3d at 589. The *Williams* court noted that any right not to be removed from a graduate school program "is a matter of the contract . . . between the student and the college." *Id*. at 588. However, because there was no suggestion of a contract entitling the *Williams* plaintiffs to continued enrollment at the defendant university, their due process claim

7

failed as a matter of law. *See id.* at 589-90.

So too in Park's case. Park's property theory argument requires the existence of a contract entitling her to continued enrollment at the IUSD. Although Park claims that she had a contract with IU entitling her to continued enrollment (and a diploma) as long as she paid her tuition and maintained a 2.0 GPA, as the Court concluded above, no contract existed on those terms. Therefore, Park has failed to plead the existence of a contract that entitles her to continued enrollment at IUSD. Accordingly, the Court cannot conclude that the Defendants violated Park's due process rights when they terminated her enrollment.

Park also asserts that the Defendants' conduct violated her liberty interest in her "good name, reputation, honor, or integrity." Docket No. 23 at 8. In support of this argument she claims that "[t]he Supreme Court has long recognized a liberty interest in one's good name and reputation where a stigma attached to one's name is coupled with an effect on a significant 'tangible' interest such as a loss of present or future employment." *Id.*

In *Goss v. Lopez*, 419 U.S, 565, 574 (1975), the Supreme Court stated: "The Due Process Clause . . . forbids arbitrary deprivations of liberty." "'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' the minimal requirements of the Clause must be satisfied." *Id.* (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). However, only one year after *Goss* was decided, the Supreme Court cautioned that "[t]he words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law." *Paul v. Davis*, 424 U.S. 693, 701 (1976). In *Paul*, the Court explained that the *Constantineau* line of cases "does not establish the proposition that reputation

8

alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id*. The Court concluded by noting that in *Goss* (which Park cites in her response brief), the suspended high school students had a constitutionally protected liberty interest in their reputations because they also had a state-created right to attend school that was infringed by the school's conduct. *See id.* at 710.

Here, Park has not sufficiently pled the existence of a tangible, protected, interest that was infringed by the Defendants. Although she claims that her contract with IU is such an interest, as the Court has previously noted, no contract exists on the terms that she alleges. Accordingly, because she has no separate interest at stake, she cannot allege a due process claim based solely on violation of her liberty. As she lacks both a protected liberty and a protected property interest, the Defendants' motion to dismiss must be **GRANTED** as to Park's procedural due process claim.

### C. Substantive due process.

Park also asserts a substantive due process claim. Substantive due process protects citizens from arbitrary exercises of government power. In *Washington v. Glucksberg*, 521 U.S. 702 (1997), the Supreme Court identified two steps in the substantive due process analysis:

> First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest. Our Nation's history, legal traditions, and practices thus provide the crucial guideposts for responsible decisionmaking, that direct our exposition of the Due Process Clause.

*Glucksberg*, 521 U.S. at 720-21 (internal citations omitted).

As previously noted, neither the Supreme Court nor the Seventh Circuit has recognized education, or the right to continued enrollment in a graduate program, as a fundamental right. *See Galdikas v. Fagan*, 342 F.3d 684, 688-89 (7th Cir. 2003), *overruled on other grounds by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004). Thus, any substantive due process argument that is premised on Park having a fundamental right to education or continued enrollment at IUSD fails as a matter of law.

Park's argument that the Defendants' conduct was an arbitrary exercise of government power that violated the Fourteenth Amendment fares no better. When analyzing Park's claim in this manner, the Court must determine whether the Defendants abused their power in a way that "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Although this is undoubtedly a factual inquiry, taking the facts alleged in the Complaint as true, Park's allegations simply do not arise to the level of a "shocks the conscience" claim.

Moreover, according to Seventh Circuit precedent, when an alleged violation of substantive due process has at its foundation the deprivation of a state-created property interest (such as the contract between Park and IU), the plaintiff "must show 1) that the state's decision was arbitrary and irrational, and 2) that the state committed a separate constitutional violation or that state law remedies are inadequate." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997). Thus, even assuming that the Defendants' conduct *was* arbitrary and irrational, Park's claim still fails as a matter of law because her allegations do not suggest an independent constitutional violation and she has neither alleged nor established that Indiana law does not

provide her with an adequate remedy. Accordingly, the Defendants' motion to dismiss is **GRANTED** as to Park's substantive due process claim.

## D. Equal protection.

Park's final claim is that the Defendants violated the Equal Protection Clause of the Fourteenth Amendment. In order to state an Equal Protection claim, a plaintiff must allege membership in a protected class that has been singled out for unfair treatment by the government. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). "To establish a prima facie case of discrimination under the equal protection clause, [a plaintiff is] required to show that he 'is a member of a protected class,' that he 'is otherwise similarly situated to members of the unprotected class,' and that he 'was treated differently from members of the unprotected class.'" *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (quoting *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)). Park must also show that the Defendants acted with discriminatory intent. *Id*.

Park's claim fails because she has not pled any facts indicating: (1) that she is a member of a protected class; (2) that she was otherwise similarly situated to members of the unprotected class; or (3) that the Defendants acted with discriminatory intent. Pursuant to *Twombly*, Park must plead sufficient facts to raise her right to relief above a speculative level. Thus, her Complaint must provide the factual grounds for her Equal Protection claim. She cannot simply rely on labels and conclusions. *See Twombly*, 550 U.S. at 555. Because the Complaint does not allege facts that make her Equal Protection claim plausible on its face, the Defendants' motion to dismiss must be **GRANTED** as to this claim.

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss (Docket No. 19) is **GRANTED**. The Plaintiff's Motion for Oral Argument (Docket No. 24) is **DENIED**.

SO ORDERED: 02/09/2011

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Cory Stephen Brundage
cb@brundagelaw.com

S. Andrew Burns
Cox Sargeant & Burns PC
aburns@coxsargelaw.com